**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

KRIS K. McSORLEY,                    )          3:06-CV-00067-LRH (RAM)
                                     )
              Plaintiff,             )
                                     )
       vs.                           )          **REPORT AND RECOMMENDATION**
                                     )          **OF U.S. MAGISTRATE JUDGE**
JOHNS, et al.,                       )
                                     )
              Defendants.            )
_____  )

       This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

       Before the court is Defendants' Motion for Summary Judgment(Doc. #33). Plaintiff opposed the motion (Doc. #41) and Defendants replied (Doc. #45).

**BACKGROUND**

       Plaintiff Kris McSorley is an inmate at Ely State Prison.  During the times relevant to this case he was an inmate at Northern Nevada Correctional Center (NNCC) and Lovelock Correctional Center (LCC).  (Docs. #13, #33).  In his complaint he alleges that Defendants Dr. Johns, Dr. Scott, and Dr. D'Amico violated his rights under the Fourth, Eighth, and Fourteenth Amendments by failing "to properly diagnose & treat a pre-existing medical condition of Plaintiff's."  (Doc. #13).  The alleged condition of which Plaintiff complains is "a seriously painful & debilitating back condition, causing him extreme pain & suffering ..."  (*Id.*).  In Count I Plaintiff alleges that Dr. Johns saw him at NNCC in April of 2005,was made aware of Plaintiff's back condition, reviewed some MRI results (presumably of Plaintiff's back) and

then refused to schedule Plaintiff for surgery because of, according to Plaintiff, "NDOC budget constraints" and the "failure of medical director, Dr. Ted D'Amico, to approve surgery due to misinterpretation of MRI results." (*Id.*) Plaintiff alleges that Dr. Johns further infringed on his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments when he refused to schedule Plaintiff for a second MRI in the time period from April 2005 to May 2005. (*Id.*). Plaintiff further alleges that during this time period Dr. Johns provided him with no other medication besides from "IBU's" and that "she threatened to discontinue them after ten days, forcing Plaintiff to live w/ severe back pain w/ no relief." (*Id.*). He blames the apparent discontinuation of his pain medication on Dr. D'Amico, whom he alleges made or implemented (it is unclear from the complaint) a policy that led to Plaintiff being deprived of the medicine he allegedly needed to treat his pain. (*Id.*). Finally, Plaintiff alleges that Dr. Johns refused to schedule him for needed X-rays during this time, also in violation of his rights. (*Id.*).

Plaintiff was then apparently transferred to Lovelock Correctional Center (LCC) where the violations of his rights recounted in Count II allegedly occurred. (*Id.*). Plaintiff alleges that upon transfer to LCC he was seen by Dr. Scott for his back injury and that Dr. Scott, just like Dr. Johns, misinterpreted Plaintiff's MRI results, refused to schedule Plaintiff for subsequent MRIs "to prove the need for surgery," and also mismanaged Plaintiff's pain medications "by following Dr. Ted D'Amico's prescribing policies, & prescribing ten-day stints of IBU's and muscle relaxers & then discontinuing these for 30 days before prescribing again." (*Id.*). In Count II Plaintiff also alleges that in December of 2005 Dr. Scott requested Plaintiff's medical transfer back to NNCC for further treatment. (*Id.*).

In Count III Plaintiff alleged that once back at NNCC he was again seen by Dr. Johns, who allegedly discontinued all of Plaintiff's pain medications and threatened to make Plaintiff live with back pain and no pain medications. (*Id.*). Further, Plaintiff alleges that Dr. Johns refused to order any more tests, such as MRI's or X-rays on Plaintiff, and "discounted

2

[Plaintiff's] need for surgery.  (*Id.*).  Plaintiff alleges that as a result of these actions he is forced to live with "extreme & excruciating pain."  (*Id.*).

**DISCUSSION**

*A.*    **Standard for Summary Judgment**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th  Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th  Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3)

3

considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

The court must defer to State prison officials regarding day-to-day prison operations. *Turner v. Safley*, 482 U.S. 78, 84-85 (1986)(holding that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform ..." and additional deference to prison authorities is due where state penal system is involved). In order to defeat summary judgment the plaintiff must demonstrate the regulations at issue are not reasonably related to legitimate penological interests. *Bahrampour v. Lampert*, 356 F.3d 969, 973 (9th Cir. 2004).

**B.    Exhaustion of administrative remedies**

The Prison Litigation Reform Act ("PLRA") bars a suit brought by a prisoner with respect to prison conditions under **§** 1983 or any other Federal law until such administrative remedies as are available are exhausted. The PLRA is codified in 42 U.S.C. § 1997e et. seq. and provides in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement is an affirmative defense that must be raised and proved by the defendant. *Wyatt v. Terhune*, 315 F.3d 1108, 1112 (9th Cir. 2003).

4

1    In *Woodford v. Ngo* the U.S. Supreme Court recently clarified that exhaustion cannot

2    be satisfied by filing an untimely or otherwise procedurally infirm grievance. 126 S. Ct. 2378,

3    2382 (2006).

4    For prisoners within the NDOC system, exhaustion of administrative remedies includes

5    complying with the grievance procedures set forth in Administrative Regulation 740 (AR 740).

6    (Doc. #34, Exh. J).  Under AR 740 the inmate grievance procedure includes three levels of

7    review: one informal, and two formal.  (*Id.*).

8    Defendants argue, among other things, that Plaintiff did not exhaust his administrative

9    remedies as to his claims against any of the Defendants. (Doc. #33). According to Defendants,

10   Plaintiff did not properly exhaust his administrative remedies since he either (1) never filed

11   a grievances to complain about the maltreatment alleged above or (2) filed a grievance but

12   failed to appeal it to exhaustion.  (*Id.*).  Defendants attached to their motion records of the

13   grievances Plaintiff did file during the relevant time period.  (*Id.*).  Although multiple

14   grievances complain regarding Plaintiff's pain medication, none even mention back surgery,

15   MRI tests, or X-rays. (Doc. #33. Exh. A, Exh. B-I).  According to the documentation attached

16   to Defendants' filing, the only grievance - on any topic - that Plaintiff appealed beyond the

17   initial level was GR-2006-1-842.  (Doc. #34, Exh. I).  That grievance, received by NDOC on

18   January 9, 2006, Plaintiff complains that Dr. Johns was depriving him of medication he needed

19   for pain.  (*Id.*).  The grievance was denied and Plaintiff appealed to Level 1.  (*Id.*).  There too

20   the grievance was essentially denied, with the response being that Plaintiff needed to

21   "continue with the grievance process to the next level to resolve."  (*Id.*).   That response is

22   dated February 9, 2006.  (*Id.*).  Plaintiff initiated this lawsuit on February 3, 2006, before he

23   had received the response to his Level 1 grievance and before he had appealed it to Level 2,

24   which the evidence reflects he did on March 3, 2006.  (Doc. #13, Doc. #34).  Plaintiff's reply

25   does not attach any documents or present any evidence to refute Defendants' argument that

26   he either failed to file grievances on these matters or did not appeal the response to the

27

28
                                                5

1  grievances to the final level.[1] (Doc. #41).  Accordingly, the evidence before the court indicates

2  that Plaintiff has failed to exhaust his available administrative remedies by either failing to

3  appeal denied grievances through the available successive levels or by not filing any

4  grievance at all.   Defendants' motion for summary judgment (Doc. #33) should be

5  **GRANTED.** Because failure to exhaust administrative remedies is a threshold issue for cases

6  of this nature, the court need not address Defendants other argued grounds for summary

7  judgment.

8  **RECOMMENDATION**

9  **IT IS THEREFORE RECOMMENDED** that the District Judge enter an order

10  **GRANTING** Defendants' Motion for Summary Judgment (Doc. #33).

11  The parties should be aware of the following:

12  1.   That they may file, pursuant to 28 U.S.C. § 636(b)(1)© and Rule IB 3-2 of the

13  Local Rules of Practice, specific written objections to this Report and Recommendation within

14  ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's

15  Report and Recommendation" and should be accompanied by points and authorities for

16  consideration by the District Court.

17  2.   That this Report and Recommendation is not an appealable order and that any

18  notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the

19  District Court's judgment.

20  DATED:  April 4, 2007.

21

22  _____

23  UNITED STATES MAGISTRATE JUDGE

24

25

26  _____

27  [1]Plaintiff styled his reply "Objection to defendants [sic] Motion for Summary Judgement."  Its substance, however, if that of a reply, and thus the court considers it accordingly.

28  6